716 F.2d 1053
 John M. JORDAN, Plaintiff,
and
Federal Energy Regulatory Commission, Appellant,
v.
RANDOLPH MILLS, INC., Appellee.
In re RANDOLPH MILLS, INC., Debtor.
John M. JORDAN, Appellant,
and
Federal Energy Regulatory Commission, Intervenor,
v.
RANDOLPH MILLS, INC., Appellee.
In re RANDOLPH MILLS, INC., Debtor.
 Nos. 83-1359, 83-1360.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1983.
Decided Sept. 6, 1983.
 
 Wiley P. Wooten, Burlington, N.C. (Jeffrey A. Andrews, Vernon, Vernon, Wooten, Brown & Andrews, P.A., Burlington, N.C., on brief), Joshua Z. Rokach, Washington, D.C. (Stephen R. Melton, Acting Gen. Counsel, Jerome M. Feit, Sol. Federal Energy Regulatory Commission, Washington, D.C., on brief) and Lee M. Goodwin, Washington, D.C. (Goodwin & Schwartzstein, Washington, D.C., on brief), for appellants.
 R. Bradford Leggett, Winston-Salem, N.C. (Allman, Spry, Humphreys & Armentrout, Winston-Salem, N.C., on brief), for appellee.
 Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 An applicant for a license from the Federal Energy Regulatory Commission to produce electric power by utilizing an abandoned dam on property of a bankrupt debtor in possession was held to have been in violation of a broad restraining order, issued by the bankruptcy court against interference with the debtor's possession and enjoyment of its property. The bankruptcy court held John Jordan, who had filed the application on behalf of his employer, in contempt, and that finding was affirmed by the district court. 29 B.R. 398. We granted a stay of the order, which imposed substantial sanctions upon Jordan for delay in withdrawing the pending application.
 
 
 2
 We reverse because the filing and processing of the application was not a violation of the restraining order.
 
 I.
 
 3
 The debtor, Randolph Mills, Inc., is the owner of a tract of land on which there are two abandoned dams. The dam sites are unrelated to any business of Randolph Mills.
 
 
 4
 In 1979, Randolph Mills sought reorganization under Chapter XI of the Bankruptcy Act of 1898. Since then it has been a debtor in possession operating under the control and jurisdiction of the United States Bankruptcy Court of the Middle District of North Carolina. On July 13, 1979, that court had entered a restraining order to protect the debtor and its property from legal proceedings and process, and from interference in any other way with the possession or management by the debtor of its property or with the jurisdiction of the bankruptcy court.
 
 
 5
 John Jordan, vice president of Sellers Manufacturing Co., Inc., was interested in the hydroelectric power potential of the two dams. Pursuant to Federal Energy Regulatory Commission Rules, Practice and Procedure, 18 C.F.R. Sec. 4.80, et seq., in April 1980 Jordan filed on behalf of Sellers Manufacturing applications for preliminary permits which would enable Sellers to study and appraise the potential of the two dams for the production of electric power. Randolph Mills responded, when it learned of the pendency of those applications, by informing the Federal Energy Regulatory Commission of the terms of the July 13, 1979 restraining order. Nevertheless, on November 18, 1980, FERC issued to Sellers Manufacturing preliminary permits for study of the potential of the two dams.
 
 
 6
 Almost a year later, on November 2, 1981, Jordan filed applications for licenses to operate the two dams.
 
 
 7
 While those applications were pending, William H. Lee made an offer to Randolph Mills to purchase the upper dam with certain adjacent land and electric equipment for $170,000. The offer, however, was conditional. It was good only if there were no outstanding FERC permits or licenses and no pending application for any such permits or licenses. Though the application of Sellers Manufacturing for a license to operate that dam was then pending, the debtor sought approval of the bankruptcy court of a sale to Lee. That approval was granted, though his conditional offer was unenforceable.
 
 
 8
 Contempt proceedings were then initiated in the bankruptcy court by an order to Jordan to show cause why he should not be held in contempt for filing and prosecuting the Sellers application for a license. The bankruptcy judge held Jordan in contempt. On appeal to the district court, the FERC intervened, with the permission of the district judge, but the finding of contempt was upheld, and the district court imposed substantial sanctions upon Jordan in the event that he did not effectively withdraw the pending Sellers application before 5 o'clock p.m. on April 25, 1983. We granted a stay, and heard the case upon an expedited briefing schedule.
 
 II.
 
 9
 This dam is within the regulatory jurisdiction of the FERC. The owner has no right to develop or maintain it for the generation of electric power, except to the extent it may be granted a license by the FERC to do so. See Federal Power Commission v. Union Electric Co., 381 U.S. 90, 85 S.Ct. 1253, 14 L.Ed.2d 239 (1965); United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). Whatever other rights Randolph Mills may have as a riparian landowner, it has no right to reconvert or use this dam for the production of electric power, and it cannot authorize another to do so. Only the FERC can do that.
 
 
 10
 The United States may develop and operate hydroelectric projects, and it may license others to do so. A license which it grants to another, however, authorizes the licensee to do no more than the United States itself could do. It neither transfers nor diminishes any right of possession or enjoyment possessed by the riparian owner. If the licensee is not the owner, the owner may exclude the licensee from the land. The licensee can exercise the privilege granted by the United States only if he acquires from the owner the right to use the land and facilities necessary for operation of the project. See Federal Power Commission v. Mohawk Power Corp., 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 686 (1954).
 
 
 11
 If the owner and non-owner licensee cannot agree upon a fair price for the land and structures the licensee wishes to use, the licensee may employ the right of eminent domain he obtained with his license. 16 U.S.C.A. Sec. 814. The existence of that right, however, is not a new burden upon the landowner. It existed in the United States before the license issued. Issuance of the license simply transferred that right from the United States to the licensee. In short, the pendency of the application had no effect upon the owner's use and enjoyment of the land.
 
 
 12
 With so much, the district judge seems to have been in agreement. The Deep River in which the dams are located is a navigable stream, and the district court recognized the plenary power of the United States to license and regulate the operation of hydroelectric projects in it. It concluded, however, that the pendency of the license application impaired the marketability of the debtor's property, and, since it frustrated consummation of the sale to Lee, it interfered with the conclusion of the Chapter XI proceedings. We, however, cannot accept that reasoning.
 
 
 13
 The highest and best use of the land is for a hydroelectric project. For agricultural purposes, the value of the land would be nothing like as much as the $170,000 offered by Lee, and no other more profitable use is suggested in the record. If the owner was to realize the full potential of the land, therefore, it should have sought a license for itself, a step it did consider, or begun negotiations with Jordan. At the time Lee made his offer, there was no other potential purchaser on the scene, and Lee's offer was quite illusory, because satisfaction of the condition would require withdrawal of Jordan's application. Jordan had a clear right to process his application for the license, and the debtor had no right to require him to desist.
 
 
 14
 What is involved here is not a hindrance of the debtor in disposing of property it does not need. Essentially it is a contest between Sellers Manufacturing and Lee. Each wishes to develop the hydroelectric project. To open the way for Lee, the bankruptcy judge went so far as to require not only that Jordan withdraw his application but that his current application not be treated by the FERC, in the event of any subsequent application, as giving Sellers Manufacturing any priority. The district judge recognized that the bankruptcy judge had no power to control the FERC's interpretation and application of its own rules and practices, but Lee's strategem clearly had as its purpose Lee's becoming the licensee.
 
 
 15
 The only apparent hindrance attributable to Jordan's filing and processing the application can be said to lie in the fact that he did not sooner come forward with a purchase offer himself. There is no requirement, of course, that he purchase the property before obtaining assurance that he would be the licensee. After the district court's order, however, Sellers Manufacturing did come forward with an offer to buy the same property Lee sought to acquire for $175,000. That offer was conditioned upon acceptance before termination of this appeal, but it is a dramatic illustration of the fact that the debtor could have had its money had it not steadfastly preferred to deal with Lee as to the upper dam.
 
 
 16
 If the pendency of the license application had any effect upon the debtor's property or the completion of the Chapter XI proceedings, it is entirely indirect and collateral. The debtor's property rights have not been diminished, and the debtor is still in the position that, if it wishes to realize the potential value of its property, it must deal with one licensed by the FERC or one in a position to obtain such a license. Jordan had invested substantial sums in engineering studies of the potential of the two dam projects, and the bankruptcy court had no right to require that Sellers Manufacturing step aside and make way for Lee.
 
 
 17
 We conclude that the finding that Jordan had violated the injunctive decree of July 13, 1979 was erroneous, and the order holding him in contempt must be vacated.
 
 
 18
 VACATED AND REMANDED.